LEE TRAN & LIANG, APLC
  James M. Lee (Bar No. 192301)
  Enoch H. Liang (Bar No. 212324)
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017
Telephone: (213) 612-3737
Facsimile:  (213) 612-3773
*Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC.; a Delaware Corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>   Defendants. | Case No.  5:12-mc-80192-EJD<br><br>Underlying Civil Action Pending in U.S. District Court for the Central District of California, Case No. 2:10-cv-03738-ABC-CW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FRCP 30(B)(6) DEPOSITION TESTIMONY OF NON-PARTY GOOGLE, INC.**<br><br><u>Hearing</u><br><br>DATE:  October 2, 2012<br>TIME:   10:00 a.m.<br>CTRM:  5, San Jose Courthouse<br><br>**Honorable Paul S. Grewal** |

1
2

# **TABLE OF CONTENTS**

3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.   Introduction ............................................................................................. 1

II.  Factual Background ................................................................................. 3

III.  The Main Case in the Central District of California ........................................ 3

IV.  GoDaddy Has Implicated Google In All Aspects of the Page Parking Programs ................................................................................. 5

V.  Plaintiff's Meet and Confer Efforts with Google ........................................ 5

VI.  Argument ................................................................................................ 7

VII.  The Information Plaintiff Seeks from Google is Clearly Relevant to Claims and Defenses in the Main Case .......................................... 8

VIII. Google's Objections Should be Disregarded .................................... 12

    1.   Google's Boilerplate Objections Are Not Narrowly Tailored to the Deposition Topics Sought by Plaintiff ................................. 12

    2.   Google Takes Too Narrow a View of the ACPA's "Bad Faith" Factors ................................................................................... 12

    3.   Any Confidentiality Concerns are Unfounded .......................... 14

IX.  Conclusion ............................................................................................. 14

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**CASES**

4

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. of Mont.,*

5

   408 F.3d 1142, 1149 (9th Cir. 2005) ..................................................................... 12

6

*Del Campo v. Kennedy,*

7

   236 F.R.D. 454, 457 (N.D. Cal 2006) ..................................................................... 7

8

*DSPT Int'l v. Nahum,*

9

   624 F.3d 1213, 1218 (9th Cir. 2010) ....................................................................... 3

10

*Duran v. Cisco Sys., Inc.,*

11

   258 F.R.D. 375, 379-80 (C.D. Cal 2009) ............................................................. 12

12

*Ford Motor Co. v. Greatdomains.com, Inc.,*

13

   177 F. Supp. 2d 635, 643 (E.D. Mich. 2001) ...................................................... 13

14

*Gonzales v. Google, Inc.,*

15

   234 F.R.D. 674, 680 (N.D. Cal. 2006) ................................................................... 8

16

*Oakes v. Halvorsen Marine Ltd.,*

17

   179 F.R.D. 281, 283 (C.D. Cal. 1998)................................................................... 7

18

*Schaffner v. Crown Equipment Corp.,*

19

   2011 WL 311378, at *1 (N.D. Cal. Jan. 26, 2011)........................................... 7, 12

20

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,*

21

   202 F.3d 489, 498 (2d Cir. 2000) ........................................................................ 13

22

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,*

23

   813 F.2d 1207, 1211-12 (Fed. Cir. 1987)............................................................. 8

24

*Virtual Works, Inc. v. Volkswagen of America, Inc.,*

25

   238 F.3d 264, 270 (4th Cir. 2001) ....................................................................... 13

26

27

**STATUTES**

28

15 U.S.C. § 1125(d)(1)(B)(i) ...................................................................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15 U.S.C. § 1125(d)(1)(B)(i)(I-IX) .......................................................................... 12

Fed. R. Civ. P. 26(b)(2) ............................................................................................ 7

Fed. R. Civ. P. 45(a) ................................................................................................. 7

Fed. R. Civ. P. 45(a)(1)(C) ....................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction

Plaintiff seeks to enforce a third party deposition subpoena served on Google. The underlying matter pending in the Central District of California is a lawsuit under the Anticybersquatting Consumer Protection Act ("ACPA"). *See generally* Dkt. No. 51, Case No. 2:10-cv-03738-ABC-CW (Sept. 20,, 2010 Order on Motion to Dismiss), attached as Exh. C to the Declaration of Enoch Liang ("Liang Decl."). Plaintiff AMPAS alleges that GoDaddy has engaged in cybersquatting by registering, trafficking in, licensing, and using Internet domain names containing AMPAS's famous trademarks, such as "2011oscars.com," "oscarlist.com," and "academyawardz.com" (the "Infringing Domain Names").

The ACPA requires Plaintiff to prove that GoDaddy had "bad faith intent to profit."  Here, GoDaddy does not just act as a registrar, but actually places *all domain names* without an active web site into GoDaddy's "Parked Page" program, which automatically fills that domain name with content—namely sponsored advertising links.  Specifically, GoDaddy—partnering with Google's "Adsense for Domains" program ("AFD")—placed sponsored links to advertisements directly on the Infringing Domain Names.[1]  Specifically, GoDaddy's parked pages contain advertisements and sponsored links that refer to the same general subject matter of AMPAS's activities such as the Academy Awards, the Oscars, Hollywood, cinema, movies, awards and award shows, red carpet fashion, etc.

How is Google involved?  GoDaddy has repeatedly informed AMPAS and the Central District of California Court that the sponsored links and advertisements on the Parked Pages are supplied by Google through Google's "Adsense for

---

[1] Independent from Google, GoDaddy also placed its own banner ads for its services, as well as the goods sold by its CEO Bob Parsons, on the Infringing Domain Names.

-1-

Domains" program ("AFD").  Accordingly, AMPAS served a third party subpoena on Google for documents, as well as a third party subpoena on Google for deposition testimony.  While Google has only produced about 4,600 pages of documents in response to AMPAS's subpoena, this motion focuses solely on compelling a deposition from Google, which Google has refused to provide to either Plaintiff or GoDaddy.

This motion to compel should be granted for the following reasons.

Google clearly possesses relevant information:  There is no question that Google possesses relevant information about the AFD program's use in GoDaddy's Parked Pages Program.  Indeed, Plaintiff's deposition topics all revolve around the following basic areas of inquiry—all of which are undeniably relevant to the cybersquatting claims and GoDaddy's defenses in this case:

- How, when, and who came up with the idea and decided to implement AFD in GoDaddy's Parked Page Programs;

- Google's knowledge of methods or processes to prevent trademark infringement in GoDaddy's Parked Page Programs, including Google's knowledge of GoDaddy's patent application entitled "Systems and Methods for Filtering Online Advertisements Containing Third Party Trademarks."

- Google's policies, procedures, and expectations relating to domain names incorporating third party trademarks in GoDaddy's Parked Page Programs, including manual screening of domain names that are akin to weekly or bi-weekly screenings for domain names that are considered "adult"; and

- Revenue sharing between Google and GoDaddy, for both third-party advertisements and GoDaddy specific advertisements.

Google cannot meet its burden of showing that a deposition would be unduly burdensome or repetitive:  As shown further below, Plaintiff is not seeking repetitive testimony from Google.  Plaintiff has deposed at least 12 GoDaddy witnesses—many of those witnesses have been unable to answer even basic

questions about who, what, when, and how GoDaddy came to the decision to monetize its Parked Page Programs. The only other entity with knowledge on these issues is Google.

## II.    Factual Background

The following sets forth the factual background of the underlying case, Google's relevant knowledge, and Plaintiff's attempts to depose Google.

### A. The Main Case in the Central District of California

The underlying action is pending in the United States District Court for the Central District of California, case number 2:10-cv-3738 ABC (CWx) (the "Main Case").  Plaintiff alleges, *inter alia*, that Defendant GoDaddy has used Plaintiff's valuable and famous trademarks in violation of the ACPA, 15 U.S.C. § 1125(d), which "establishes civil liability for 'cyberpiracy' where a plaintiff proves (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical of confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from the mark."  *DSPT Int'l v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010).  The Main Case's Complaint was filed on May 18, 2010 and, after multiple extensions due to the complexity of the matters involved and substitution of GoDaddy's counsel, the fact discovery cutoff is currently scheduled for September 27, 2012.

GoDaddy claims to be world's leading ICANN-accredited domain name registrar for the most common domain extensions (*i.e.* .COM, .NET, .ORG, etc.). The Main Case involves two similar but distinct programs, offered by GoDaddy, that result in domain names being "parked"[2] with relevant pay-per-click advertisements.  The Parked Pages are populated with advertisements from two

[2] A parked domain name is one that is owned, but that does not have content on it outside of advertisements provided by pay-per-click advertising providers.  *See e.g.*, *HCB, LLC v. Oversee.net*, 2009 WL 2996578, at *1, n1 (D.V.I. Sept. 16, 2009).

1  sources: (1) those sponsored pay-per-click ads supplied by Google through its

2  AdSense for Domain Partners program ("AFD"), and (2) GoDaddy specific banner

3  advertisements. *See* Appendix A (examples of Parked Pages).

4       Free Parking at GoDaddy: The first program is GoDaddy's "Free Parking"

5  program. The Free Parking program exploits newly registered domain names that

6  registrants have not yet added content to. Examples of such situations include

7  when a registrant purchases a domain name but does not immediately add content

8  or point it to an active web site.

9       In such cases, the unused domain names are automatically parked and

10  populated with Google's AFD program, as well as GoDaddy's banner ads. All

11  revenue generated from those advertisements is shared <u>exclusively</u> between

12  Google and GoDaddy; the registrants themselves receive nothing. Indeed,

13  discovery has shown that the registrants are often unaware that their unused

14  domain names are being monetized by GoDaddy. *See* Liang Decl., ¶¶12-13, Exhs.

15  G and H.

16       Cash Parking at GoDaddy: The second program is GoDaddy's "Cash

17  Parking" program. The Cash Parking program is similar to Free Parking in that

18  both programs result in domain names being parked and populated with

19  advertisements from Google's AFD program.

20       However, Cash Parking differs from Free Parking in that individual

21  registrants purchase the Cash Parking service from GoDaddy for a fee. In return,

22  registrants are able to add content to the parked domain names—in addition to

23  Google's pay-per-click advertisements—and allowed to select specific keywords

24  to tailor the displayed advertisements. Most importantly, for Cash Parking

25  customers, revenue generated by the pay-per-click ads on their domain names is

26  shared between Google, GoDaddy, and the registrant.

27

28

**B. GoDaddy Has Implicated Google In All Aspects of the Page Parking Programs**

Since the earliest stages of this case, GoDaddy has consistently pointed the finger at Google.  *See, e.g.*, Liang Decl., ¶14, Exh. I.  Ultimately, GoDaddy served its own document and deposition subpoena on Google, and on August 20, 2012, filed its own separate motion to compel Google's to produce documents and produce a 30(b)(6) witness for deposition.

**C. Plaintiff's Meet and Confer Efforts with Google**

Plaintiff's Initial Subpoenas and Objections:  On April 27, 2011, Plaintiff served non-party Google with two subpoenas pursuant to Rule 45, including a Request for Production of Documents (the "Document Subpoena") and Subpoena for Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (the "Deposition Subpoena").  *See* Liang Decl., ¶3, Exh. A.

On May 4, 2011, Google responded to each subpoena with a separate but nearly identical form letter.  Each letter contained boilerplate objections and requested meet and confer efforts to determine the applicability of each objection.  *See* Liang Decl., ¶4, Exh. B.

The First Meet/Confer Efforts:  Plaintiff and Google met and conferred telephonically beginning on May 9, 2011.  At that time, Plaintiff agreed to defer seeking information from Google until after it had taken more fact discovery from GoDaddy.  *See* Liang Decl., ¶6.

After May 2011, Plaintiff took extensive discovery from GoDaddy, including the review of over 60,000 pages of documents and taking over 12 depositions (including a 30(b)(6)) deposition of GoDaddy.  *See* Liang Decl., ¶¶6-7.

The Second Meet/Confer Efforts:  In December 2011, Plaintiff re-initiated meet and confer efforts with Google.  After explaining to Google that Plaintiff's extensive fact discovery with GoDaddy still failed to answer certain questions about Google's involvement, Plaintiff and Google agreed that Google would first

produce documents responsive to Plaintiff's subpoena.  *See* Liang Decl., ¶7, Exh. D. On or about January 10, 2012, Plaintiff and Google agreed that Google would first produce documents responsive to Plaintiff's document subpoena.  *Id.* However, Google still refused to produce a witness to testify.

The Third Meet/Confer Efforts:  Thereafter, in mid-February 2012, Google produced about 4,600 pages of documents to Plaintiff.  *See* Liang Decl., ¶8. Plaintiff, after sharing these Google documents with GoDaddy, reviewed these documents.  *Id.*  After determining that it still needed a deposition, in late March/early April 2012, Plaintiff again requested a deposition from Google.  *Id.*, Exh. E.

Google again refused.  On April 3 and April 9, 2012, Plaintiff and Google exchanged their final positions on the issue of whether and why a deposition of Google was necessary.  *See* Liang Decl., ¶¶8-9, Exhs. E and F.

Additional Developments since April 2012:  Since April 2012, GoDaddy's counsel (Bryan Cave) withdrew because of purported conflicts with Google. Apparently, the entire time that GoDaddy (and its counsel Bryan Cave) was pointing the finger at Google, GoDaddy's counsel also represented Google concurrently on other matters.  *See* Liang Decl., ¶10-11.

Because of the conflict, the Central District of California Court granted an *ex parte* application by Bryan Cave to withdraw from representing GoDaddy on May 4, 2012, and ultimately extended the deadlines in the case.  *See* Liang Decl., ¶10-11.  Later, on May 21, 2012, the former Bryan Cave attorneys re-appeared in the case under a different firm.

## III.   Argument

Federal Rule of Civil Procedure 45 authorizes a party to issue a subpoena commanding the person to whom it is directed to attend a give testimony at a deposition, hearing, or trial.  *See* Fed. R. Civ. P. 45(a)(1)(C).  Under Northern District Local Rule 37-2, a party moving to compel discovery must "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied."  It is well settled that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."  *Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal 2006) (quoting Fed. R. Civ. P. 45 advisory committee notes on 1970 amendments) (internal quotations omitted).

If the subpoena is proper, then the person on whom the subpoena was served is duty bound, if instructed by the Court, to appear for deposition.  *See* Fed. R. Civ. P. 45(a).  In addition, "[t]he party resisting discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining and supporting its objections."  *Schaffner v. Crown Equipment Corp.*, 2011 WL 311378, at *1 (N.D. Cal. Jan. 26, 2011) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)).

Plaintiff's Deposition Subpoena to Google is narrowly tailored to seek information relevant to the Main Case and believed by both Plaintiff and GoDaddy alike to be in the exclusive control of Google.  After conducting numerous depositions, reviewing tens of thousands of pages of documents from GoDaddy, and reviewing Google's document production, Plaintiff seeks information that is yet undisclosed.

Moreover, the Deposition Subpoena complies with the restrictions of Rule 45 and imposes no undue burden or expense on Google.  Finally, Plaintiff has exhausted all non-judicial means to gain Google's cooperation in this matter.  Yet Google refuses to produce a witness for deposition as required by law without

1   sufficient justification.

2        Thus, this Motion is Plaintiff's last resort to obtain necessary and relevant

3   discovery from Google, and the Court should require to the deposition to proceed.

4   **A. The Information Plaintiff Seeks from Google is Clearly Relevant to**

5   **Claims and Defenses in the Main Case**

6        Courts have recognized that the relevancy standard applied to subpoenas "is

7   liberally construed to permit the discovery of information which ultimately may

8   not be admissible at trial." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D.

9   Cal. 2006). Further, a Court not involved in the underlying litigation, as is the case

10  here, "should be especially hesitant to pass judgment on what constitutes relevant

11  evidence thereunder." *Id.* at 681 (quoting *Truswal Systems Corp. v. Hydro-Air*

12  *Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)). Finally, "[w]here

13  relevance is in doubt . . . the court should be permissive." *Id.*

14       As a general matter, Plaintiff is looking for testimony from Google to rebut

15  GoDaddy's claim they cannot be liable under the ACPA because Google's AFD

16  program is solely responsible for cybersquatting. However, specifically, to aid the

17  Court in understanding the relevance of each of the deposition topics, Plaintiff sets

18  forth below each deposition topic, as well as why Plaintiff needs the information

19  from Google itself (as opposed to be able to obtain it from GoDaddy).

20

21       **Deposition Topic No. 1:** Any discussions and/or negotiations between
     GODADDY and GOOGLE about GODADDY'S PARKED PAGE
22   PROGRAMS, including, but not limited to any discussions and/or
     negotiations about the use of ADSENSE in GODADDY'S PARKED PAGE
23   PROGRAM.

24  Plaintiff needs Google to testify about how Google's AFD program came to be

25  used by GoDaddy and what GoDaddy expected to receive in terms of the

26  placement of advertisements on Parked Pages. Plaintiff has attempted to obtain this

27  information from GoDaddy, but to no avail. To date, among numerous other

28  witnesses, Plaintiff has deposed two members of GoDaddy's Executive

-8-

Management Team—its former General Counsel Christine Jones and its Senior Executive Vice President, Barb Rechterman.  Neither was able to testify about how, when, and why GoDaddy started monetizing domain names in its Parked Page Programs.[3]  *See* Liang Decl., ¶17.

Indeed, as the Court has seen in GoDaddy's separately filed motion to compel Google testimony, GoDaddy takes the position that that it is a completely passive participant in the domain name monetization process and that Google calls all the shots and does all the work.  Google's testimony would help Plaintiff rebut GoDaddy's assertion.

The only party that Plaintiff can obtain this information from is Google.

**Deposition Topic No. 2:**  Any discussions or communications between GOOGLE and GODADDY referring or relating to the PATENT APPLICATION or any other methods or processes to prevent trademark infringement in the ADSENSE program.

As set forth in GoDaddy's motion to compel Google's deposition, Google incorporates various trademark infringement policies for its AFD Program.  So does GoDaddy, having applied in October 2007 for a patent called "Systems and Methods for Filtering Online Advertisements Containing Third Party Trademark," Pub. No. US 2008-0033822 A1 (the "Patent Application").  While Plaintiff has deposed the inventor of GoDaddy's technology—Richard Merdinger—Plaintiff also needs to depose Google about (1) Google's own technology for filtering or preventing trademark infringement, (2) Google's knowledge and consideration of the GoDaddy Patent Application for filtering or preventing trademark infringement, and (3) Google's own expectations for its AFD partners as it relates to preventing trademark infringement.

For example, several GoDaddy witnesses have testified that the technology

---

[3] The Central District of California Court is currently deciding whether Plaintiff can depose GoDaddy's former CEO Bob Parsons on, among other things, this issue.

in the Patent Application could not be used because it would lead to too many "false positives." Google should be able to testify about the issue of "false positives," as well as (1) whether Google parses or filters for trademarks in domain names, (2) whether Google screens for trademarks before providing sponsored links or advertising for Parked Pages, and/or (3) whether Google instead, expects its partners like GoDaddy to do so first before sending a domain to AFD.

Indeed, it appears that Google screens for "adult domain names," refusing to provide AFD to its partners' domain names that are considered "adult." *See* Liang Decl., ¶15, Exh. J. If that type of filtering can be done, then it should be the case that GoDaddy could also prevent AFD for domain names that include trademarks, such as Plaintiff's famous trademarks.

**Deposition Topic No. 3:** Any discussions or communications between GOOGLE and GODADDY referring or relating to the GODADDY AGREEMENT.

The "GODADDY AGREEMENT" refers to the various iterations of the GoDaddy-Google agreements for AFD. As set forth in connection with Deposition Topic No. 1, Plaintiff has been unable to obtain any information about these agreements from GoDaddy witnesses.

**Deposition Topic No. 4:** Any discussions or communications between GOOGLE and GODADDY referring or relating to domain names that incorporate third party trademarks and are placed in GODADDY'S PARKED PAGE PROGRAM.

See Discussion in Deposition Topic No. 2, incorporated herein. Moreover, any information that Google has about GoDaddy's state of mind would help Plaintiff rebut GoDaddy's "blame Google" defense—for example, that GoDaddy is well aware that trademarked domain names are placed into the Parking Programs and that GoDaddy has not instituted a mechanism to prevent that.

**Deposition Topic No. 5:** Whether and to what extent GOOGLE has knowledge that domain names in the ADSENSE program, GODADDY'S PARKED PAGE PROGRAM, or similar page parking programs may or do incorporate third party trademarks.

1    <u>See</u> Discussion in Deposition Topic No. 2 and No. 4, incorporated herein.

2

3    **Deposition Topic No. 6:**  Whether and to what extent GOOGLE marketed or promoted ADSENSE in connection with GODADDY'S PARKED PAGE PROGRAMS.

4

5    <u>See</u> Discussion in Deposition Topic No. 1, incorporated herein.

6    **Deposition Topic No. 7:**  The process or method by which advertisements and sponsored links are selected and placed on domain names within GODADDY'S PARKED PAGE PROGRAMS, including domain names incorporating the term "OSCAR," "OSCARS," "ACADEMY AWARD," or "ACADEMY AWARDS."

7

8

9    Plaintiff alleges that GoDaddy has engaged in cybersquatting by permitting

10   sponsored advertising to be placed on the Infringing Domain Names—sponsored

11   advertising that relates specifically to the Academy Awards, the Oscars,

12   Hollywood, cinema, movies, awards and award shows, red carpet fashion, etc.

13        Defendant GoDaddy has blamed Google for supplying the sponsored links

14   and advertisements.   Plaintiff needs to depose Google to rebut GoDaddy's

15   allegations and show that GoDaddy is culpable for the cybersquatting conduct.

16   **Deposition Topic No. 8:**  The amount of annual revenue that GOOGLE has shared with GODADDY in connection with GODADDY'S PARKED PAGE PROGRAMS for the years 2005, 2006, 2007, 2008, 2009, and 2010.

17

18   Pursuant to Court order, GoDaddy has produced certain aggregate revenue figures

19   in this case.   However, it is not entirely clear whether that aggregate revenue

20   includes (1) just pay-per-click fees that GoDaddy receives from Google, or (2)

21   revenues received from GoDaddy's *own* banner advertising, or (3) revenue from

22   some other source like the monthly/semi-annual enrollment fees that GoDaddy

23   charges for its Cash Parking services.

24        The only way for Plaintiff to confirm the aggregate revenue that GoDaddy

25   received in connection with its Free Parking and Cash Parking Programs is to

26   obtain independent confirmation from Google.

27

28   **Deposition Topic No. 9:**  The authenticity of all DOCUMENTS produced pursuant to the Subpoena To Produce Documents, Information, Or Objects

-11-

1  served concurrently herewith on GOOGLE by The Academy of Motion
   Picture Arts and Sciences.

2  This topic is self-explanatory.   Plaintiff needs someone from Google to

3  authenticate the documents that have been produced so that Plaintiff can use them

4  at trial.

5

6  **B. Google's Objections Should be Disregarded**

7  **1. Google's Boilerplate Objections Are Not Narrowly Tailored to the**

8  **Deposition Topics Sought by Plaintiff**

9  Google made 13 boilerplate objections in its original response to Plaintiff's

10 subpoena.   *See* Liang Decl., Exh. B.   Because these objections were blanket and

11 not narrowly tailored to the actual deposition topics, they should be disregarded.

12 *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379-80 (C.D. Cal 2009) (citing

13 *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. of Mont.,* 408 F.3d 1142, 1149

14 (9th Cir. 2005).   Such boilerplate objections fail to satisfy Google's burden of

15 showing that the discovery should not be allowed.   *See Schaffner v. Crown*

16 *Equipment Corp.*, 2011 WL 311378, at *1 (N.D. Cal. Jan. 26, 2011) ( "[t]he party

17 resisting discovery has the burden to show that discovery should not be allowed,

18 and has the burden of clarifying, explaining and supporting its objections")

19 (internal citation omitted).

20 **2. Google Takes Too Narrow a View of the ACPA's "Bad Faith"**

21 **Factors**

22 Google, in its last April 9, 2012 letter to Plaintiff, (Exh. F to Liang Decl.),

23 argues that the information sought by Plaintiff is irrelevant to the nine bad faith

24 factors enumerated in the ACPA.   *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I-IX).

25 However, both the ACPA and courts interpreting it agree that the nine bad faith

26 factors listed in the statutes are in no way meant to be exhaustive.   *See* 15 U.S.C. §

27 1125(d)(1)(B)(i) ("a court *may consider* factors such as, but *not limited to*--")

28 (emphasis added); *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d

489, 498 (2d Cir. 2000) (holding that "we are not limited to considering just the listed factors when making our determination of whether" the defendant had a bad faith intent to profit).  For example, the court in *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001), stated that "[t]he ACPA allows a court to view the totality of the circumstances in making the bad faith determination."  That includes "looking at the purely circumstantial indicia of bad faith, as well as direct evidence. . . ."  *Id.*  Finally, the broad definitions of bad faith intent employed by different Courts have necessitated extensive discovery in ACPA matters.  *See generally Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635, 643 (E.D. Mich. 2001) (". . . plaintiffs frequently will find it difficult, if not impossible, to obtain evidence probative of 'bad faith intent' without court sanctioned discovery").

Indeed, the Central District Court recognized that there was no need to address each of the nine factors individually.  *See* Liang Decl., Exh. C, September 20, 2010 Ruling on Motion to Dismiss, at 15 of 27.  Instead, the Central District Court found "that the presence of two circumstances supports an inference of bad faith intent to profit from the Academy's marks":  (1) the fact that Plaintiff sent approximately 60 cease/desist letters to Defendant regarding cybersquatting, and (2) the fact that the exemplar parked pages "contain advertising links that would likely appeal to visitors looking for the Academy's marks."  *Id.*  Clearly, Google's testimony is relevant to the second factor listed by the Central District Court.

Here, Plaintiff is not suing the actual registrants of the Infringing Domain Names for cybersquatting.  Other than in a few instances, GoDaddy was clearly *not* the "registrant" of record; instead, GoDaddy acted above and beyond its role as a simple "registrar"—by taking its registrants' domain names and monetizing those domain names, including domain names that incorporate famous third party trademarks like those of Plaintiff.  Hence, Plaintiff's case may (or may not) ultimately proceed under the ACPA's enumerated bad faith factors.

-13-

1    Such a narrow and literal reading of the ACPA's bad faith factors does not

2 assist Google in avoiding a deposition.

3    **3.  Any Confidentiality Concerns are Unfounded**

4    The Central District Court entered a protective order in the Underlying Case,

5 that should more than protect Google's confidentiality concerns, once Google

6 agrees to be bound by it.  *See* Liang Decl., Exh. K.

7

8 **IV.    Conclusion**

9    For the foregoing reasons, Plaintiff requests that the Court grant its motion

10 to compel and order a 30(b)(6) deposition of Google.

11

12 DATED:  August 27, 2012            By: /s/ Enoch Liang

13
                                     BOIES, SCHILLER & FLEXNER LLP
14                                   Stuart Singer (*pro hac vice*)
                                     ssinger@bsfllp.com
15                                   David Nelson (*pro hac vice*)
16                                   dnelson@bsfllp.com
                                     401 East Las Olas Blvd, Suite 1200
17                                   Fort Lauderdale, FL 33301
18                                   Tel: 954-356-0011
                                     Fax: 954-356-0022
19

20                                   David L. Zifkin (SBN 232845)
                                     dzifkin@bsfllp.com
21                                   David I. Michaels (SBN 276100)
22                                   dmichaels@bsfllp.com
                                     225 Santa Monica Blvd., 11th Fl.
23                                   Santa Monica, CA 90401
24                                   Tel:  310-395-5800
                                     Fax:  310-578-7898
25

26                                   LEE, TRAN & LIANG APLC
                                     James M. Lee (SBN 192301)
27                                   jml@ltlcounsel.com
28                                   Enoch H. Liang (SBN 212324)

-14-

ehl@ltlcounsel.com
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017
Tel: 213-612-3737
Fax: 213-612-3773

FOOTE, MEYERS, MIELKE
& FLOWERS LLC
Robert M. Foote (*pro hac vice*)
rmf@foote-meyers.com
Kathleen Chavez (*pro hac vice*)
kchavez@foote-meyers.com
Matthew Herman (*pro hac vice*)
mherman@foote-meyers.com
30 North LaSalle Street, Suite 2340
Chicago, IL 60602
Tel: 630-232-6333
Fax: 630-845-8982

*Attorneys for Plaintiff*

# APPENDIX  A

This Web page is parked FREE, courtesy of GoDaddy.com

Today's offers at GoDaddy.com

SEARCH

## Sponsored Listings

**2010 Oscar Nominations**
Find out who will win an Oscar on March 7th - news, photos and more!
www.HitFix.com/Awards

**What Will The Co-Hosts**
Have to Say? Join the Conversation. Don't Miss The View Weekdays on ABC
abc.go.com/TheView

**"31 Days of Oscar" On TCM**
Watch 9 Decades of Oscar Films 2/1 - 3/3 on Turner Classic Movies
www.TCM.com/31DaysofOscar

**The 2010 Academy Awards**
The New York Times brings you complete coverage of the big event
www.nytimes.com/movies

**2009 Oscar News**
Check Out The Nominee List And The Predictions At The Frisky!
TheFrisky.com/Oscars

**Red Carpet Beauty**
Experience Latina's Red Carpet Read exclusive quotes
www.latina.com

**District 9 Oscar Nominees**
Find Out How 2010's Oscar Nominees Got Started at Vancouver Film School.
VFS.com/EnterD9

**Nexus One by Google**
Smart, Slim, Speedy & Simple To Use From Just $179 w/ Plan. Buy Online!
www.google.com/phone

**Oscar Blandi®**
Buy Luxury Hair Products Free Samples and Shipping at $50!
LockandMane.com/OscarBlandi

**Local Movie Theaters**
Find Listings for Local Movie theaters - indie, multiplex & more.
yellowpages.com


Learn how to succeed—in life and online—with straight talk from Go Daddy's CEO & Founder, Bob Parsons®.
*Viewer discretion advised!*



  



Get what you need in **UNDER 5 MINUTES** with our Product Advisor
Start Here!


**$1.99** **Domains**
With any new, non-domain purchase! No quantity limit!

*Find a domain name now!*
.com GO
What's a Domain? Advanced Search
*Plus ICANN fee of 18 cents per domain name year.

**Want to buy this domain?**
Let us help you get it!

### Related Searches

Buy a 2007 Camry

2007 Toyota FJ Cruiser in Los Angeles

Used Toyota Camry Los Angeles

Romantic Dresses

Microsoft Office 2007

Red Dress


**Free Shipping on** over 80,000 items at **GO DADDY MARKETPLACE®** GO

**HOSTING PLANS**
99.9% Network Uptime!
FREE Setup!
Save up to 15% on multi-year hosting plans!
.net   php perl


**Get a FREE domain** when you complete one of these valuable offers!
†Good for one 1-year registration of any available .COM, .US, .BIZ, .INFO, .NAME, .NET or .ORG

**WEBSITE TONIGHT®**
Create your own Web site in minutes!
Plans from $3.79/mo!


**SOLD!**
The smart choice for buying & selling domains
**AUCTIONS**
Memberships just $4.99/year! Lowest commissions!

**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!
 I'm interested in: Selling products online, securing my site, hosting, reseller programs

**This Web page is parked FREE, courtesy of GoDaddy.com**

**ICANN ACCREDITED**

Visit GoDaddy.com for the best values on:
Domain names • Web Hosting • Web Site Builders • Email Accounts • SSL Certificates • Ecommerce Products • And More! • See Product Catalog

Go Daddy Super Bowl Commercial • Danica Patrick • Dale Jr. • Go Daddy Girls

This web page is parked FREE, courtesy of GoDaddy.com
Today's offers at GoDaddy.com  SALE



SEARCH

## Sponsored Listings

**▸▸2010 Oscar Nominations**
Find out who will win an Oscar on March 7th - news, photos and more!
www.HitFix.com/Awards

**▸▸All Film Schools**
Get Advice About Film School From Students Who Study There
www.filmschoolexposed.com

**▸▸La-Z-Boy - Official Site**
Visit La-Z-Boy for Comfort & Style Recliners, Sofas, Sleepers & More.
www.La-Z-Boy.com

**▸▸Nexus One by Google**
Smart, Slim, Speedy & Simple To Use From Just $179 w/ Plan. Buy Online!
www.google.com/phone

**▸▸The 2010 Academy Awards**
The New York Times brings you complete coverage of the big event
www.nytimes.com/movies

**▸▸Chicago 1-Day Coupons**
Up to 90% off the best stuff to do! Restaurants, spas, events & more
www.Groupon.com

**▸▸District 9 Oscar Nominees**
Find Out How 2010's Nominees Got Started at Vancouver Film School.
VFS.com/EnterD9

**▸▸Local Movie Theaters**
Find Listings for Local Movie theaters - indie, multiplex & more.
yellowpages.com

**▸▸Faces of America**
What Makes America? What Makes Us? Find Out on PBS. Weds 2/10 to 3/3
PBS.org

**▸▸Movies in Theaters Now**
Try Bing's New Interactive Gallery of Current In-Theater Movies Today!
www.Bing.com/VisualSearch


Learn how to succeed—in life and online—with straight talk from Go Daddy's CEO & Founder, Bob Parsons®.
*Viewer discretion advised!*



  

 Get what you need in **UNDER 5 MINUTES** with our Product Advisor
Start Here!


The web is your Domain!®

**Find a domain name now:**
.com  GO
What's a Domain? Advanced Search
*Plus ICANN fee of 18 cents per domain name year.

**Want to buy this domain?**
Let us help you get it!

### Related Searches

**▸▸International Movies**

**▸▸Movie Date**

**▸▸Website to Download New Movies**

**▸▸Z Bigatti**

**▸▸Academy Awards Competition**

**▸▸TV Guide**


**Free Shipping on over 80,000 items at GO DADDY**
GO

**HOSTING PLANS**
99.9% Network Uptime!
FREE Setup!
Save up to 15% on multi-year hosting plans!
  

**Get a FREE domain** when you complete one of these valuable offers!
†Good for one 1-year registration of any available .COM, US, BIZ, .INFO, .NAME, .NET or .ORG


**WEBSITE TONIGHT®**
Create your own Web site in minutes!
Plans from $3.79/mo!

**SOLD!**
The smart choice for buying & selling domains
 **AUCTIONS**
Memberships just $4.99/year! Lowest commissions!

**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!

I'm interested in: Selling products online, securing my site, hosting, reseller programs

This Web page is parked FREE, courtesy of **GoDaddy.com**

 ICANN ACCREDITED

**Visit GoDaddy.com for the best values on:**
Domain names  •  Web Hosting  •  Web Site Builders  •  Email Accounts  •  SSL Certificates  •  Ecommerce Products  •  And More!  •  See Product Catalog

Go Daddy Super Bowl Commercial  •  Danica Patrick  •  Dale Jr.  •  Go Daddy Girls

This Web page is parked FREE, courtesy of GoDaddy.com
▶▶ Today's offers at GoDaddy.com

SEARCH

## Sponsored Listings

**▶▶2010 Oscars Predictions**
Who will win an Academy Award this year? Check out our predictions!
en.terra.com

**▶▶Oscar Blandi Products**
Treat Your Hair With Oscar Blandi Product. Free Samples On All Orders
LockandMane.com/Blandi

**▶▶2010 Oscar Nominations**
Find out who will win an Oscar on March 7th - news, photos and more!
www.HitFix.com/Awards

**▶▶Dry Shampoos at Sephora**
Save Your Style, Wash Without Water Top Brands, Free Shipping Over $50!
www.Sephora.com

**▶▶Master Chocolatier Ortega**
Enjoy Oscar Ortega's Best Delicious and Artistic Chocolates
www.chocolatierra.com/ortega

**▶▶35% Off Oscar Glad Bulbs**
Stunning Fire Engine Red Bloom. Get Over 1/3 Off! Spring Delivery.
AmericanMeadows.com/Oscar-Bulbs

**▶▶Temporary Power**
From Cords to Distribution boxes Full line of temp power & customs
www.ericson.com

**▶▶2009 Oscar News**
Check Out The Nominee List And The Predictions At The Frisky!
TheFrisky.com/Oscars

**▶▶District 9 Oscar Nominees**
Find Out How 2010's Nominees Got Started at Vancouver Film School.
VFS.com/EnterD9

**▶▶The Cahen Archives**
Canadian Master 1916-1956 Official Website
www.oscarcahen.com



Learn how to succeed—in life and online—with straight talk from Go Daddy's CEO & Founder, Bob Parsons®. *Viewer discretion advised!*



  



**Find a domain name now:**
[                    ] .com ▼ [GO]
What's a Domain? Advanced Search
*Plus ICANN fee of 18 cents per domain name year.

**Want to buy this domain?**
Let us help you get it!

### Related Searches

▶▶ Buy a 2007 Camry

▶▶ 2007 Toyota Camry in Los Angeles

▶▶ Oscar Nominations

▶▶ Oscar Winners

▶▶ Oscar Juicer

▶▶ Oscar Ballot



**Free Shipping on over 80,000 items at GO DADDY MARKETPLACE** [GO]

**HOSTING PLANS**
99.9% Network Uptime! FREE Setup!
Save up to 15% on multi-year hosting plans!



**Get a FREE domain** when you complete one of these valuable offers!
†Good for one 1-year registration of any available .COM, .US, BIZ, .INFO, .NAME, .NET or .ORG

  

**WEBSITE TONIGHT®**
Create your own Web site in minutes!
Plans from $3.79/mo!

**SOLD!**
The smart choice for buying & selling domains
**AUCTIONS**
Memberships just $4.99/year! Lowest commissions!



**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!
 I'm interested in: Selling products online, securing my site, hosting, reseller programs

**This Web page is parked FREE, courtesy of GoDaddy.com**

ICANN ACCREDITED

Visit GoDaddy.com for the best values on:

Domain names • Web Hosting • Web Site Builders • Email Accounts • SSL Certificates • Ecommerce Products • And More! • See Product Catalog

Go Daddy Super Bowl Commercial • Danica Patrick • Dale Jr. • Go Daddy Girls