1  DURIE TANGRI LLP
   MICHAEL H. PAGE (SBN 154913)
2  mpage@durietangri.com
3  217 Leidesdorff Street
   San Francisco, CA 94111
4  Telephone:   415-362-6666
   Facsimile:    415-236-6300
5
   Attorneys for Non-Party
6  GOOGLE INC.

7

8                  IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11 | ACADEMY OF MOTION PICTURE ARTS    | Case No. 5:12-mc-80192-EJD-PSG
   | AND SCIENCES, a California nonprofit |
12 | corporation,                      | [USDC Central District Case No:
   |                                   | 2:10-cv-03738-ABC-CW]
13 |            Plaintiff,             |
   |                                   | **NON-PARTY GOOGLE INC.'S OPPOSITION**
14 |      v.                           | **TO DEFENDANT GODADDY.COM, INC.'S**
   |                                   | **MOTION TO COMPEL DOCUMENTS AND**
15 | GODADDY.COM, INC., a Delaware     | **DEPOSITION TESTIMONY**
   | corporation; THE GODADDY GROUP INC., a |
16 | Delaware corporation; DOMAINS BY PROXY, | Date:   October 2, 2012
   | INC., a Delaware Corporation;     | Time:   10:00 a.m.
17 | GREENDOMAINMARKET.COM, an unknown | Ctrm:   5-4th Floor
   | entity; BDS, an unknown entity; and | Judge:  Honorable Paul Singh Grewal
18 | XPDREAMTEAM LLC, a California      |
   | limited liability corporation,    |
19 |                                   |
20 |            Defendants.            |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................1

    A.  GoDaddy is Contractually Barred From Seeking Discovery From Google .......................1

    B.  GoDaddy Failed to Meet and Confer Prior to Bringing This Motion...............................5

    C.  The Discovery is Too Late............................................................................5

    D.  The Discovery Sought is Wholly Irrelevant ......................................................6

    E.  The Discovery Sought is Redundant...............................................................9

    F.  The Discovery Sought is Available From the Parties and Public Sources .........................9

    G.  The Discovery is Burdensome .....................................................................10

        1.  Documents .......................................................................................10

        2.  Deposition ........................................................................................12

III.  CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cal West Nurseries, Inc. v. Superior Court,*
  129 Cal. App. 4th 1170 (2005) ......................................................................................4

*Del Campo v. American Corrective Counseling Svcs., Inc.,*
  No. C 01-21151 JW (PVT), 2010 WL 3744436 (N.D. Cal. Sept. 20, 2010)...................9, 10

*Hernandez v. Paccuis,*
  109 Cal. App. 4th 452 (2003) ........................................................................................4

*Lacy v. American Biltrite, Inc.,*
  No. 10cv0830 JM(RBB), 2012 WL 909309 (S.D. Cal. March 16, 2012) ..........................6

*Link v. Wabash R. Co.,*
  370 U.S. 626 (1962)......................................................................................................3

*Moon v. SCP Pool Corp.,*
  232 F.R.D. 633 (C.D. Cal. 2005)..................................................................................7, 9

*Streit v. Covington & Crowe,*
  82 Cal. App. 4th 441 (2000) ..........................................................................................5

*Travelers Indem. Co. v. Metropolitan Life Ins. Co.,*
  228 F.R.D. 111 (D. Conn. 2005).....................................................................................7

*U.S. v. International Business Machines Corp.,*
  83 F.R.D. 97 (S.D.N.Y. 1979) ........................................................................................7

**Statutes**

15 U.S.C. § 1125(d) ...........................................................................................6, 7, 8

15 U.S.C. § 1125(d)(1)(A)(ii) ...........................................................................................6

15 U.S.C. § 1125(d)(1)(B)(i)I-IX ........................................................................................7

**Rules**

Fed. R. Civ. P. 30(b)(6)......................................................................................................6

Fed. R. Civ. P. 45(c)(1)....................................................................................................9, 10

Fed. R. Civ. P. 45(c)(3)(A) ...............................................................................................7

N.D. Cal. L.R. 37-1............................................................................................................5

NON-PARTY GOOGLE INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY
CASE NO. 5:12-MC-80192-EJD-PSG

## I.      INTRODUCTION

There are multiple reasons this Motion must be denied.  It seeks to enforce discovery served a year too late, demanding that Google search for, review, and produce documents, and prepare and present a witness, days before an oft-extended discovery cutoff in a two-year-old case.  It seeks discovery from a third party that can and should be had from the parties to the lawsuit.  It seeks discovery that is wholly irrelevant to the claims in the underlying case.  It seeks discovery redundant to that already sought and had by another party and provided to GoDaddy. It places an inordinate burden on a third party.  And it simply ignores Google's offer to meet and confer on a more reasonable set of requests.

The Court need not reach any of these issues, however, because the Motion must be denied for a far simpler reason (albeit one that GoDaddy fails to even mention until page 17 of its Motion).  More than a year ago, GoDaddy agreed **in writing** that it would not seek **any** discovery from Google in this action.  That agreement, entered into by GoDaddy's own counsel in exchange for a conflict waiver from Google, created a binding contract.  The Court need merely enforce it.

## II.     ARGUMENT

### A.      GoDaddy is Contractually Barred From Seeking Discovery From Google

From the outset of the underlying litigation, GoDaddy was represented by the Bryan Cave firm.  Bryan Cave, however, also represented, and continues to represent, Google in a number of matters.  Accordingly, On April 26, 2011, Bryan Cave partner Eric Schroeder wrote to Hilary Ware, Google's Managing Litigation Counsel, to ask that Google agree to a conflict waiver:

> This is a heads-up and conflict-waiver request regarding a case brought to my attention last week in which Bryan Cave is involved, and our client GoDaddy.com will want to serve a witness subpoena on Google.
>
> In short, Google will very likely be a material witness in the following matter: Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc. et al., Case No. 2:10-cv-03738 (filed May, 2010, amended October 10, 2010, C.D. Cal.).  Bryan Cave represents GoDaddy.com and the other defendants . . . .

> Google is implicated as **at least** a witness . . . .
>
> Of most immediate concern is that the GoDaddy.com/Google relationship will be a major topic in discovery, and that both AMPAS or GoDaddy.com will want to depose and get documents from Google.  I'm told that GoDaddy needs to depose or get testimony from Google to defend against the "bad faith intent to profit" element of the ACPA claim.
>
> Will Google waive the conflict in having Bryan Cave serve a subpoena on Google for documents and a Rule 30(b)(6) designee?

Declaration of Michael H. Page ("Page Decl.") Exh. A.

Google responded later that day, declining a waiver that would include taking discovery from Google: **"Under the circumstances, we're not comfortable waiving the conflict."** *Id.* Google did, however, allow Bryan Cave to continue to represent GoDaddy, so long as GoDaddy did not seek discovery from Google.[1]  GoDaddy's counsel confirmed that agreement the following day, April 27, 2011, as follows:

> Thanks for the quick response, and understood.  **I spoke with the Bryan Cave partner handling the GoDaddy.com defense regarding the conflict, and I've confirmed that they will not seek to subpoena Google.**

*Id.*

For more than a year thereafter, GoDaddy and its counsel enjoyed the fruits of that agreement.  Bryan Cave continued to represent GoDaddy in the underlying litigation, and continued to represent (and be paid by) Google in other matters.

Apparently GoDaddy now regrets that agreement, and (once it finally alludes to it obliquely on page 17) seeks to disown it, attempting various arguments.  Those arguments are—to put it mildly—flatly inconsistent with the facts and the law.

*First*, GoDaddy attempts to dismiss its counsel's unambiguous written agreement as "a vague assurance by an attorney acting as Google's outside counsel.  GoDaddy was not represented by this attorney . . . ."  Motion at 17.  This is pure hogwash.  Mr. Schroeder was and

---

[1] GoDaddy's own Motion confirms those terms:  "Not surprisingly, Google declined the request for informal [sic] discovery, but agreed to not object to Bryan Cave's continued representation of GoDaddy in this action."  Motion at 18.

is a partner at Bryan Cave, and Bryan Cave was GoDaddy's counsel.  He approached Google for a waiver for "our client GoDaddy," acting on GoDaddy's behalf, not Google's.  *See, e.g.*, Page Decl. Exh. A (". . . GoDaddy.com has asked that I tell Google that Go Daddy wants to open a dialogue . . .").  The fact that he was not the primary Bryan Cave attorney for GoDaddy is irrelevant: he expressly told Google he was reaching out for a waiver at Mr. McKown's request, and expressly confirmed that he "spoke with the Bryan Cave partner handling the GoDaddy.com defense regarding the conflict" before "confirm[ing]" the agreement not to seek discovery.  He was, in short, GoDaddy's attorney, acting with both apparent and actual authority.

*Second*, GoDaddy attempts to toss Mr. Schroeder under the bus, claiming that it "never authorized such an agreement."  Motion at 17.  Perhaps.  But if GoDaddy's counsel made an agreement without his client's approval, that is a matter between them.  A party to litigation "is deemed bound by the acts of its lawyer-agent . . . ."  *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962).  More to the point, it is self-evidently false.  GoDaddy attempts to bolster this argument with Mr. McKown's declaration.  In that declaration, Mr. McKown describes his conversation with Mr. Schroeder on April 29, 2011, and swears that "at no point during any of my conversations with Mr. Schroeder did I ever ask him to inquire into Google's willingness to allow GoDaddy to conduct discovery of Google, nor did I ever request that he ask for a conflict waiver of any kind."  Decl. ¶18.  Mr. McKown further swears that he did not even think GoDaddy needed a waiver, and thus could not possibly have sought one, and that Mr. Schroeder simply "misunderstood" and sought "informal" discovery all on his own.[2]  *Id.*; Motion at 18.

How are we to square this with the detailed correspondence between Mr. Schroeder and Google **two days earlier**, in which Mr. Schroeder not only asked for precisely that waiver to serve subpoenas on his own client, but was already up to speed on all of the details of the

---

[2] Mr. McKown further claims that his conversation with Mr. Schroeder was prompted by receipt of subpoenas served by AMPAS (and that Mr. Schroeder must have misunderstood this as a request for a waiver to serve GoDaddy's own subpoenas).  McKown Decl. ¶18.  But this cannot be true.  Those subpoenas were served **after** Mr. Schroeder reached out to Google, as he explained in his April 27, 2011 email:  "However, as a heads up, **shortly after I got your email yesterday** [AMPAS] served GoDaddy.com with the following notices of subpoena on Google . . . ."  Page Decl. Exh. A.

discovery GoDaddy sought to take in Mr. McKown's case (about which, we are now told, Mr. Schroeder previously knew nothing)?  Motion at 18.  How is it that, in that alleged April 29, 2011 conversation, the fact that Mr. Schroeder had *already* both sought a waiver and made promises on GoDaddy's behalf never came up?  Why, if GoDaddy made a mistake in entering into the agreement with Google, did it never mention that "mistake" or seek to undo it?  And how is it, in light of GoDaddy's express April 2011 request for a waiver to serve discovery subpoenas on Google, that GoDaddy's counsel can now swear that "GoDaddy did not desire to conduct discovery of its own as to Google until after it received AMPAS's production . . . in March 2012."  McKown Decl. ¶16.  There can be no other conclusion:  GoDaddy's newly minted position—that it only recently decided it wanted to take discovery from Google at all—is fabrication.[3]

 *Third*, GoDaddy tries to erase its agreement by arguing that there really wasn't any conflict to waive at all, and thus somehow its agreement should be ignored, because "at no time before the issuance of an unrelated December 2011 advisory opinion by the State Bar of California did counsel for GoDaddy believe that the mere participation in such discovery may constitute a conflict of interest."  Motion at 18.

 This is nonsense on multiple levels.  Clearly GoDaddy's counsel thought they needed a waiver before December 2011, because they sought and received one.  More to the point, they were right:  the idea that, prior to December 2011, it was ethically permissible for an attorney to take his own client's deposition is nothing short of remarkable.  As the cited opinion itself makes clear, it is hornbook ethical law in California (and elsewhere) that one cannot take discovery from one's own client without a waiver.  *See*, *e.g.*, *Cal West Nurseries, Inc. v. Superior Court*, 129 Cal. App. 4th 1170 (2005) (disqualification of entire firm for serving discovery on current client); *Hernandez v. Paccuis*, 109 Cal. App. 4th 452 (2003) (disqualification for cross-

---

[3] GoDaddy now claims that it "did not intend to conduct its own discovery of Google . . . until AMPAS produced 280,000 pages of documents in March 2012 that demonstrated a previously unknown and substantial relationship between AMPAS and Google."  Motion at 19.  But GoDaddy makes no effort to explain why that information is relevant to either any claim in the litigation or any category of discovery it now seeks.

examining current client serving as third party witness).  Those obligations are imputed to the
entire firm.  *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 445 (2000).

*Finally*, it simply makes no difference whether GoDaddy *needed* a waiver.  It sought one,
and it obtained one.  Whether the underlying motive for that bargain was an ethical concern
(actual or imagined) or a business one (to preserve Bryan Cave's good relationship with Google)
is wholly irrelevant.  GoDaddy's and Bryan Cave's motivations were and are their own business.
GoDaddy's lawyers made a deal on GoDaddy's behalf.  GoDaddy enjoyed the benefit of that
bargain.  It cannot renege on it now.

### B.    GoDaddy Failed to Meet and Confer Prior to Bringing This Motion

As a threshold matter, the Motion should also be denied on purely procedural grounds.
Local Rule 37-1 requires that, prior to bringing a motion to compel, "counsel have previously
conferred for the purpose of attempting to resolve all disputed issues."  Mr. McKown's
declaration states that "[o]n July 10, 2012, I personally met and conferred with" the undersigned.
In fact, that "personal meeting" was a telephone call, in which counsel for Google raised the
issue of GoDaddy's contractual agreement not to seek discovery.  That call was memorialized
the following day in a letter to Mr. McKown, attached to his declaration as Exhibit K.  In that
letter, Google reiterated its position that GoDaddy was barred from taking any discovery from
Google, but also offered "to consider a good faith, focused request for particular documents that
are (1) truly relevant to the claims at issue, (2) not available to you from other sources, and (3)
not an undue burden on Google as a third party."  *Id.*

GoDaddy ignored that offer.  Indeed, Google's counsel did not hear another word from
GoDaddy's counsel, on any subject, until service of the instant Motion six weeks later.  On that
basis as well, the Motion should be denied.

### C.    The Discovery is Too Late

As set forth above, GoDaddy forwent discovery from Google because it had made a
contractual commitment to do so.  But if this Court were instead to accept GoDaddy's revisionist
view, and find that no such agreement existed, then GoDaddy is left with no excuse for its lack
of diligence in seeking discovery from Google.  This case was filed in May 2010.  The original

1   discovery cutoff was a year ago (Page Decl. Exh. B, Dkt. 55, setting August 22, 2011 discovery

2   cutoff), and has been extended no fewer than six times (*Id.*, Dkt. 85, 95, 150, 216, 253, 270).

3   The last of those extensions, entered July 19, 2012, set the current discovery cutoff at September

4   27, 2012.

5         GoDaddy, however, waited more than *two years* after this case was filed before serving

6   its subpoena on Google on June 27, 2012.  Google responded promptly, providing its objections

7   and offering to meet and confer by letter on July 11, 2011.  GoDaddy then sat silent, until filing

8   the instant motion more than a month later, on August 22, 2012.  As a result, even if this Court

9   were to rule on this motion the same day GoDaddy's reply brief is due (September 12), Google

10  would be left with only *two weeks* before the discovery cutoff in which to search for documents,

11  review them, prepare and produce them, prepare a Rule 30(b)(6) witness, and present that

12  witness for deposition.  Neither can GoDaddy justify seeking yet another extension of the

13  discovery cutoff in order to allow sufficient time to conduct its belated discovery:  lack of

14  diligence by the party seeking discovery precludes such accommodations.  *See*, *e.g.*, *Lacy v.*

15  *American Biltrite, Inc.*, No. 10cv0830 JM(RBB), 2012 WL 909309 (S.D. Cal. March 16, 2012)

16  (lack of diligence precludes extension of deadlines).

17        This would be abusive to a litigant.  To visit a self-made emergency on a third party is

18  beyond the pale.  GoDaddy's lack of diligence should not be visited upon Google.

19        **D.**      **The Discovery Sought is Wholly Irrelevant**

20        As GoDaddy's motion explains, this is an action alleging violation by GoDaddy of the

21  Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").  The ACPA

22  prohibits the registration of domain names that are confusingly similar to the plaintiff's

23  trademarks.  The relevant question in assessing an ACPA claim is thus not what is contained on a

24  website, but rather whether the *domain name itself* "is identical confusingly similar to that

25  mark."  15 U.S.C. § 1125(d)(1)(A)(ii).

26        Both AMPAS and GoDaddy have attempted to blur the contours of an ACPA claim:

27  GoDaddy in order to attempt to shift blame to Google, and AMPAS in order to introduce

28

1   evidence of the contents of GoDaddy's web pages to the court and jury.[4]  They attempt this

2   expansion under the rubric of evidence of "bad faith intent to profit," which is an element of an

3   ACPA claim.  But the statute spells out nine separate examples of factors to be considered in

4   assessing "bad faith intent," none of which have anything to do with the contents of a webpage

5   using an accused domain name.  *Id.* § 1125(d)(1)(B)(i)I-IX (factors such as the defendant's rights

6   in the mark, prior use of the website, similarity between the defendant's name and the domain

7   name, efforts to sell the name to the mark owner, provision of false contact information, and the

8   like).  GoDaddy points to no ACPA case in which the content of the accused websites was a

9   factor in determining infringement.  Simply put, a domain name violates or does not violate the

10  ACPA regardless of the contents of the associated webpage.

11        Go Daddy next turns to AMPAS's "pleadings and arguments" to attempt to justify

12  discovery from Google, arguing that "AMPAS contends that the advertisements placed by

13  Google on GoDaddy hosted domains infringed its trademarks."  Motion at 7.  Similarly, they

14  quote AMPAS's position that "it is not the domain name itself that the Academy objects to;

15  instead, it is the monetization of the domain name by GoDaddy . . . ."  AMPAS may "object to"

16  those advertisements, but AMPAS has not brought a trademark infringement claim against either

17  GoDaddy or Google, and AMPAS's Second Amended Complaint (McKown Decl. Exh. A)

18  contains no allegations directed at the substance of ads displayed on GoDaddy's pages.

19  AMPAS's subjective views of that content cannot change the ACPA claim it brought into a

20  trademark claim it chose not to.  Both parties to this litigation would undoubtedly love to bring

21  Google into the mix, but discovery should not be used as a fishing expedition to develop claims

22  that were not pled.[5]

23

24  [4] GoDaddy goes back and forth between pointing the finger at Google (*see, e.g.*, Motion at 1)
    and claiming that "both engage in virtually identical conduct."  McKown Decl. ¶16.  Neither
25  position can be squared with GoDaddy's professed inability to see any conflict between its and
    Google's interests.

26  [5] Although irrelevance is not itself a basis to deny discovery, "[a]n evaluation of undue burden
    requires the court to weigh the burden to the subpoenaed party against the value of the
27  information to the serving party."  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal.
    2005), *quoting Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D.
28  Conn. 2005); *see also U.S. v. International Business Machines Corp.*, 83 F.R.D. 97, 104
    (S.D.N.Y. 1979) (Rule 45(c)(3)(A) requires court to consider "such factors as relevance, the need

7

1    Even a cursory review of the document requests at issue reveals that they are untethered

2 to any legitimate issue in a cybersquatting case to which Google is not a party.  For example,

3 Request 4 seeks evidence of all of Google's revenues from its entire AdSense program, for the

4 past seven years.  GoDaddy makes no effort to explain how *Google's* revenues (related not only

5 to GoDaddy but to every other AdSense user) could possibly be relevant to the question whether

6 *GoDaddy* has violated the ACPA.  To the extent *GoDaddy's* revenues are relevant, that

7 information is obviously available from GoDaddy, and has already been produced to both

8 AMPAS and GoDaddy in response to AMPAS's prior document requests.  Request 12 is even

9 farther afield:  it seeks discovery into Google's proprietary algorithms for selecting which ads to

10 display.  That information cannot possibly inform the question whether the *domain name*

11 selected by *GoDaddy* or its customers violates the ACPA.

12    For another example, Request 3 seeks *Google's* revenues related to all GoDaddy parked

13 pages, whether at issue in the lawsuit or not.  GoDaddy's *sole* argument in support of this

14 Request is that the Central District "previously ruled that GoDaddy's aggregate revenues relating

15 to the parked page programs was relevant to the issues in this case . . ."  and that therefore "[t]he

16 same  rationale applies to Google."  Motion at 9.  But GoDaddy is a party, from whom the

17 Plaintiff seeks damages:  obviously *GoDaddy's* profits will be relevant.  The "same rationale"

18 hardly applies to a non-party.

19    Similarly, Request 6 seeks documents explaining Google's policies for handling

20 trademark and cybersquatting complaints.  GoDaddy's sole argument in support of this request,

21 in its entirety, is that it "goes to the heart of the issues in this case."  Motion at 10.  How so?

22 There are no claims against Google, no claims that complaints to Google were mishandled, no

23 claims that Google's complaint processes caused GoDaddy's choices of domain names.  And, as

24 discussed below, to the extent GoDaddy needs those policies for some argument it has not

25 explained, they are both publicly available and have already been produced.

28 of the party for the documents, the breadth of the document request, the time period covered by
it, the particularity with which the documents are described and the burden imposed.")

### E.     The Discovery Sought is Redundant

As GoDaddy notes, AMPAS served its own document requests on Google well over a year ago, and Google produced thousands of pages of documents in response.  McKown Decl. Exh. J.  Many of those requests were virtually identical to GoDaddy's current requests.  For example, AMPAS has already subpoenaed and received full records of GoDaddy's revenues from Google, all contracts with GoDaddy, communications with GoDaddy, and copies of all allegedly relevant Google policies.

Google, a third party, was put to considerable cost and effort responding to those requests.  At the time GoDaddy was apparently content to honor its agreement not to seek discovery from Google, and sat by.  But GoDaddy's reversal in course cannot justify putting Google, a third party, through a second, largely redundant process of collecting, reviewing, and producing documents.  GoDaddy made the affirmative tactical decision not "to conduct of [sic] its own discovery of Google (instead, relying on the discovery efforts of AMPAS) . . . ."  Motion at 19.  The cost of that decision should not be borne by Google.

### F.     The Discovery Sought is Available From the Parties and Public Sources

Even ignoring the irrelevance and redundancy of the discovery GoDaddy belatedly seeks from Google, GoDaddy entirely ignores its obligation to seek that discovery from either public sources or parties to the litigation before burdening nonparties.  "'A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a [nonparty] subject to a subpoena.'  Fed.R.Civ.P. 45(c)(1)."  *Del Campo v. American Corrective Counseling Svcs., Inc.*, No. C 01-21151 JW (PVT), 2010 WL 3744436, at *3 (N.D. Cal. Sept. 20, 2010).  As the court in *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) explained in quashing a document subpoena to a nonparty (KSA):

> Moreover, these requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty KSA.  See *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,* 649 F.2d 646, 649 (9th Cir.1980) (discovery restrictions may be even broader where target is nonparty); *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed.Cir.1993) (affirming order requiring party to first attempt to obtain documents from opposing party rather than nonparty).  Since plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court

9

finds that, at this time, requiring nonparty KSA to produce these documents is an undue burden on nonparty KSA.

GoDaddy has made no such showing, nor can it.  For example, the Google rules and policies sought by GoDaddy in Requests 5-6 and 9 are available to either the entire public or Google's customers (including GoDaddy) on Google's website.  *See, e.g.*, http://support.google.com/adwordspolicy/bin/answer.py?hl=en&answer=50003 ("How do I file an AdSense complaint?").  Evidence of Google's decision to stop supporting hosted domains (Request 15) is likewise publicly available.  *See* http://support.google.com/adsense /bin/answer.py?hl=en&answer=2456470 ("Hosted domains have gone away").  Similarly, any contracts and communications between Google and AMPAS (Requests 13 and 14) are self-evidently available from AMPAS, a party to the litigation.  GoDaddy has made no showing that it has either (a) sought or (b) failed to obtain those documents from AMPAS before burdening Google.  On that basis as well, the Motion should be denied.

## G.     The Discovery is Burdensome

As noted above, "'A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a [nonparty] subject to a subpoena.'  Fed.R.Civ.P. 45(c)(1)."  *Del Campo v. American Corrective Counseling Svcs., Inc.*, No. C 01-21151 JW (PVT), 2010 WL 3744436, at *3 (N.D. Cal. 2010).  GoDaddy has ignored that obligation entirely, both in crafting its requests in the first instance and then refusing to meet and confer to narrow those requests.  As a result, the discovery at issue places an undue burden on Google, a third party.

### 1.     Documents

Google is inundated with more than 10,000 third party discovery requests per year. Declaration of Kristin Zrmhal ("Zrmhal Decl.") ¶8.  Most are narrowly tailored and precise, seeking a particular, well-identified set of data, such as the contents of a particular user's files. But even then, the cumulative burden is extreme.  When faced with overly broad requests, that burden is multiplied.

1    The instant Requests are an excellent example.  Requests 13 and 14 seek all

2 communications, and all agreements, between anyone at AMPAS and anyone at Google, in any

3 Google department, on any subject, for seven years.  GoDaddy and AMPAS have been in

4 litigation for over 2 years.  During discovery between the parties, AMPAS has no doubt

5 identified relevant communications and agreements with Google.  GoDaddy is no doubt aware of

6 what agreements (if any exist) they are interested in, what AMPAS and/or Google personnel

7 were parties to whatever communications they seek, and at least the general subject matter of

8 those communications.

9    But Google is left to guess.  Rather than appropriately identifying whatever narrow

10 category of documents they actually need, GoDaddy simply requests "All DOCUMENTS, ESI,

11 and/or other data REFERRING OR RELATING TO all COMMUNICATIONS between

12 GOOGLE and the Academy of Motion Pictures [sic] Arts and Sciences."  Request 14.

13    Even were it possible to collect, review, and produce such an amorphous set of

14 documents in the scant days before the discovery cutoff, the burden on Google would be

15 excessive.  As set forth in the accompanying declaration, in order to locate custodians who might

16 have responsive documents, Google discovery personnel would have to contact individuals in

17 each product group and division, in order to determine whether that group has any contracts or

18 communications with AMPAS or its agents.  Once those custodians have been identified (and

19 Google's legal department has no way to guess at how many there are until the search has been

20 conducted), Google must collect all of their electronic data, and process it via keyword search to

21 identify a "first cut" at documents that may be communications with AMPAS.  Those documents

22 must then be reviewed manually.  The average cost of searching, reviewing, and producing the

23 documents of even a single average custodian exceeds $100,000.  Zrmhal Decl. ¶ 5.

24    GoDaddy's other requests are similarly overbroad.  Requests 1 and 2 seek account

25 information (both revenue data and "fail list" data) for over 200 separate domain names.  In

26 order to assemble such data, Google must pull engineers off of their normal tasks to do searches

27 through seven years of advertising and accounting data for each of those hundreds of domains.

28 Moreover, GoDaddy can offer no argument why this information—the income generated by

1   GoDaddy's own registered domains and information concerning when those domains were

2   banned from Google's system—is not already available to GoDaddy itself.

3          Other Requests are even more abusive:  Request 3 seeks data—again already available to

4   GoDaddy—on the revenues for *all* of GoDaddy's untold thousands of park domains, whether at

5   issue in the underlying litigation, and Request 4 seeks discovery of *all* of Google's revenues

6   from the its entire AdSense program for the past seven years, untethered to GoDaddy, AMPAS,

7   or any issue in the litigation at all.

8                      **2.     Deposition**

9          GoDaddy's deposition subpoena is correspondingly abusive.  As noted above, Google is

10  besieged by third party discovery requests.  While we of course recognize the need for third

11  parties to be deposed from time to time, if Google prepared and presented an executive or

12  engineer in response to every such request, no matter how broad or tangential, there would be no

13  one left at work.  GoDaddy has made no showing of need as to any of the twelve categories for

14  which they demand a prepared witness.  To the contrary, virtually all of those categories are self-

15  evidently designed as fishing expeditions into Google's internal policies, algorithms, practices,

16  and profits, untethered to any facts actually at issue between the parties to the litigation.

17         The first topic alone is breathtaking in its scope:

18                 GOOGLE's ADSENSE program, including from 2005 to the
                   present the mechanics of the program (i.e. how the program
19                 operates), the Terms of Service required for the participation in the
                   ADSENSE program, all rules and regulations pertaining to the
20                 ADSENSE program, all policies and procedures in place relating
                   to the ADSENSE program, and the annual revenues generated by
21                 the ADSENSE program.

22  In short, *everything*, for seven years, about one of Google's major advertising products, from its

23  inner workings and trade secret algorithms, to all of its terms and regulations, to all of its income.

24  The task of preparing a single witness even for this one topic is daunting:  it is the equivalent of

25  asking General Motors for the person most knowledgeable about "Chevys, including . . . ."

26  When balanced against the at-best marginal relevance to a cybersquatting claim, the burden on

27  Google is unsupported and unsupportable.  Again, the discovery sought is neither narrowly

28  tailored to the issues of the case nor designed to minimize the burden on a third party.  To the

                                      12

contrary, there can be no legitimate reason to demand a witness into (for example) Google's methods of selecting advertisements (topic 8)[6] or Google's revenues (topic 2), other than as a fishing expedition seeking more and larger fish.

Neither would a limitation on the length of any such deposition (even had GoDaddy offered one, which it has not) serve to lessen the burden appreciably.  It makes little difference how long the deposition runs, if one must prepare the witness on a broad swath of topics and documents.

## III.   CONCLUSION

For the foregoing reasons, GoDaddy's Motion to Compel should be denied.


Dated:  September 5, 2012                         DURIE TANGRI LLP


                                                 By: _____/s/ Michael H. Page_____
                                                        MICHAEL H. PAGE

                                                 Attorneys for Non-Party
                                                 GOOGLE INC.

---

[6] GoDaddy's sole argument in support of this topic is "it is these pay-per-click ads which AMPAS alleges infringed its trademarks."  Motion at 13.  But as noted above, AMPAS has made no such claim, either against GoDaddy or Google:  this is an ACPA case.  Moreover, even if there were such a claim in this case, the algorithms Google uses to select ads is wholly irrelevant to the question whether a particular ad gives rise to a likelihood of confusion.

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on September 5, 2012 with a copy of this document via the Court's CM/ECF system.

/s/ Michael H. Page
Michael H. Page

Attorneys for Non-Party
GOOGLE INC.