1   LEE TRAN & LIANG, APLC
      James M. Lee (Bar No. 192301)
2     Enoch H. Liang (Bar No. 212324)
3   601 South Figueroa Street, Suite 4025
    Los Angeles, CA 90017
4   Telephone: (213) 612-3737
    Facsimile:  (213) 612-3773
5   *Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences*
6
7   [additional counsel listed on signature page]

8
9                 **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

| | |
|---|---|
| 12  ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation, | )  Case No.  5:12-mc-80192-EJD |
| 13 | )  Underlying Civil Action Pending in U.S. District Court for the Central |
| 14              Plaintiff, | )  District of California, Case No. 2:10-cv-03738-ABC-CW |
| 15        v. | ) |
| 16  GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC.; a Delaware Corporation; | )  **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL FRCP 30(B)(6)** |
| 17  DOMAINS BY PROXY, INC., a Delaware Corporation; | )  **DEPOSITION TESTIMONY OF NON-PARTY GOOGLE, INC.** |
| 18  GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown | ) |
| 19  entity; and XPDREAMTEAM LLC, a California limited liability corporation, | )  Hearing |
| 20 | )  DATE:  October 2, 2012 |
| 21              Defendants. | )  TIME:   10:00 a.m. CTRM:  5, San Jose Courthouse |
| 22 | )  **Honorable Paul S. Grewal** |
| 23 | ) |
| 24 | ) |

25
26
27
28

## I.    Preliminary Statement

Google raises three arguments in its Opposition—all are unavailing.

<u>First</u>, Google argues that AMPAS's motion to compel is untimely.  Wrong. The Northern District Local Rules state that a motion to compel fact discovery may be filed 7 days <u>after</u> the fact discovery cutoff.  Here, AMPAS filed its motion to compel on August 27, one month <u>before</u> the September 27 fact discovery cut-off in the underlying action.

Moreover, a closer look at the timeline reveals that AMPAS spent the 12 months from April 2011 to April 2012 trying in good faith to avoid having to depose Google.  As agreed between AMPAS and GoDaddy, AMPAS first conducted fact discovery upon GoDaddy; then, AMPAS reviewed Google's document production.  Only after those actions were completed in April 2012, did AMPAS attempt to obtain Google's deposition.  Even then, AMPAS waited until after it took the August 7 deposition of GoDaddy's General Counsel Christine Jones before filing the instant motion—brought just 3 weeks after her deposition.

<u>Second</u>, Google claims that AMPAS's 30(b)(6) deposition topics are not relevant to the ACPA, based on its assertion that a court can determine whether a domain name violates the ACPA without referring to the content on the associated website.  *See* Google's Opp., at 6.  Google's position simply misstates the law. Under the "bad faith intent to profit" prong of the ACPA, courts consistently look to the content of the websites associated with the accused domain name.  For example, if the website in question were merely used to critique the trademark holder's goods or services, then no ACPA violation would follow, regardless of what the domain name was.  Burying its head in the sand, Google tries to simply wish away the "bad faith intent to profit" prong of the ACPA.

<u>Third</u>, Google argues that AMPAS's deposition Topics are unduly burdensome upon Google.  But it certainly cannot be unduly burdensome when

-1-

Google previously identified only 4 witnesses that dealt with the GoDaddy Parked Page Programs.  Recognizing this, Google sets up a "straw man"—unfairly and obviously broadening AMPAS's deposition Topics—while ignoring AMPAS's narrowing of the Topics during the parties' meeting and conferring process.

This Court should order a 30(b)(6) deposition of Google.

## II.   Under the Northern District's Local Rules, AMPAS's Motion is Timely as a Matter of Law

Northern District of California Local Rule provides that "no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off."  Here, the fact discovery cut-off set by the Central District of California Court in the underlying action is September 27, 2012.[1]  AMPAS brought this motion to compel on August 27, 2012—*one month before* the fact discovery cut-off.  As a matter of law, AMPAS's motion to compel is timely.

It is ironic that Google is even making this argument.  Google itself—coincidentally in a case involving its AdWords program—brought a motion to compel discovery 11 months *after* the other party's responses to Google's discovery.  *See In re Google Adwords Litigation*, 2010 WL 4942516, Case No. C08-03369 JW (HRL), at *1-*2 (N.D. Cal. Nov. 12, 2010).  When the other party argued that that Google's motion to compel was delayed by almost a year, Google pointed out the above Local Rule, arguing that its motion to compel was timely since it was filed "about a week before the fact discovery deadline."  *Id.*, at *2.  The Northern District court agreed with Google, noting that it "would be unfair to deny Google's motion when (presumably) it was relying upon that rule when determining when to file its motion."  *Id.*, at *2.  The same holds true here.  Unsurprisingly, Google fails to raise this case in its Opposition.

---

[1]  Google makes much of the number of fact discovery extensions in the Underlying Action.  Regardless of how many extensions there were or the reasons therefor, it is undisputed that the current fact discovery cut-off set by the Central District Court is September 27, 2012.

1    The other cases that were cited by Google are also unavailing and actually

2    *help* AMPAS's position.  *Kendrick v. Heckler*, 778 F.2d 253, 258 (5th Cir. 1985),

3    *see* Google's Opp. at 4, held that an eight month delay in bringing a motion to

4    compel did not justify denying a motion to compel, especially when the "motion to

5    compel production was filed within the discovery cut-off fixed by the district

6    court."  Same here with AMPAS's motion.

7    Also, in *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 197 (E.D.

8    Mich. 2002), *see* Google's Opp. at 4, the issue was "whether a party can file a

9    motion to compel discovery approximately 18 months after discovery has closed."

10   Of course, in that situation, courts typically deny "tardy discovery motions . . .

11   filed after the close of discovery."  *Id.*, at 200-201.  *See also Choate v. National*

12   *Railroad Passenger Corp.*, 132 F.Supp.2d 569, 573-574 (E.D. Mich. 2001)

13   (denying motion to compel filed 3.5 months *after* close of discovery) (*see* Google's

14   Opp. at 4).  Similarly, in *Gault v. Nabisco Biscuit Co.*, 184 F.R.D 620, 621-622 (D.

15   Nev. 1999), *see* Google's Opp. at 4, the court denied the motion to compel when

16   filed "seventy-six days (76) after the close of discovery."  Here, AMPAS has not

17   waited until *after* the close of fact discovery.  The *Gault* court specifically noted

18   that a "motion to compel filed during the discovery period would rarely be

19   considered untimely."  *Id*.  Exactly AMPAS's point.

20   Finally, setting aside the clear legal arguments in AMPAS's favor, there is

21   also no factual basis to find AMPAS's motion untimely.  <u>First</u>, Google does not

22   dispute that between April 2011 (when AMPAS's subpoenas were served) and

23   February 2012 (when Google produced 5,000 pages of documents), the parties had

24   agreed to defer seeking the 30(b)(6) deposition of Google (a) so that AMPAS

25   could try and obtain the discovery from GoDaddy first, and (b) so that AMPAS

26   could review Google's documents first to determine if there was a need for the

27   30(b)(6) deposition.  *See* 8/27/2012 Liang Decl., ¶¶7 and 8, Exh. E, pg. 51.  In

28

other words, from April 2011 until approximately April 2012,[2] AMPAS was actively working with Google to find a solution that did *not* involve a deposition of Google.  Google cannot now point to that 12-month period as evidence of a delay.

Second, the six months from April 2012 (when AMPAS and Google completed their meet and confer) to August 27, 2012 (when AMPAS filed the instant motion) was also not unreasonable.  During that time period, AMPAS was trying to take certain GoDaddy depositions that may have obviated the need (or at least narrowed the topics for) for a Google deposition—specifically the deposition of GoDaddy's General Counsel Christine Jones.  Unfortunately, due to (a) GoDaddy's counsel withdrawing, and (b) Christine Jones's resignation from GoDaddy, her deposition did not occur until August 7, 2012.  *See* 8/27/2012 Liang Decl., ¶¶10 and 11.  Google does not (and cannot) dispute these facts.  Keeping that timeline in mind, AMPAS's August 27 motion was actually filed *within 3 weeks* of Christine Jones's August 7 deposition.  That is not undue delay by any stretch, even of Google's imagination.

Third, there would be no prejudice if a deposition of Google were ordered by this Court.  Google "presumes" that AMPAS will "be in a breakneck rush to conduct the deposition [of Google]."  *See* Google's Opp., at 3.  But, should the Court order a 30(b)(6) deposition of Google, AMPAS is willing to work with the Court, GoDaddy, and Google to set an appropriate timetable for Google to prepare its 30(b)(6) witness(es) for deposition.  AMPAS and GoDaddy will ensure that this reasonable schedule is met either by asking the Central District for a further continuance in the underlying action or by an agreement between the parties to take Google's deposition after the current discovery deadlines.

---

[2] AMPAS needed a few weeks to review Google's late February 2012 document production.

**III.   AMPAS's 30(b)(6) Topics are Clearly Relevant to the ACPA**

Unable to deny the relevance of AMPAS's 30(b)(6) topics, Google resorts to a series of rhetorical questions that are not helpful for the Court in deciding this issue.  *See* Google's Opp., at 3.  In essence, Google rests its argument regarding the relevance of AMPAS's 30(b)(6) topics on whether the ACPA requires evaluation of the *content* of the website associated with the accused domain name. The law is clear that *the content of the website is relevant* to the ACPA's "bad faith intent to profit" element.  As such, a Google deposition must be ordered.

**A. Google Continues to Wrongly Misconstrue the Elements of the ACPA**

Burying its head in the sand, Google continues to argue that the ACPA only requires a comparison of the accused domain name to the plaintiff's trademarks in order to establish liability.   That is an *incomplete statement* of the ACPA's required elements.   Under the "identical or confusingly similar" prong of the ACPA, courts generally compare the accused domain name(s) to the trademark(s) at issue.  However, under the "bad faith intent to profit" prong of the ACPA, courts look at numerous other factors, including the content of the website associated with the domain name, as well as the statutory "bad faith" factors.   In other words, Google would have this Court determine relevance under *only* 15 U.S.C. Section 1125(d)(1)(A)(ii)—the "identical or confusingly similar" element of the ACPA, but would have the Court *wholly ignore* the "bad faith intent to profit" element of the ACPA set forth in 15 U.S.C. Section 1125(d)(1)(A)(1) and 1125(d)(1)(B).

Under the "bad faith intent to profit" element of the ACPA, the Central District Court already held in the underlying action that the advertising links on the Parked Pages were relevant to GoDaddy's "bad faith intent to profit" from the Free Parking and Cash Parking Programs.  *See* 8/27/2012 Liang Decl., Exh. C, at page 15 of 27.  Ignoring this statement from the Central District and the cases AMPAS cited at pages 12 and 13 of its motion to compel, Google proclaims that AMPAS

1  "cites no ACPA case in which the content of the accused websites was a factor in
2  determining infringement." *See* Google's Opp., at 6.  Google is flat-out wrong.  In
3  "parked page" ACPA cases, courts consistently look to the content of the accused
4  websites in determining whether a particular registrant had "bad faith intent to
5  profit." *See, e.g., Ricks v. BMEzine.com*, 727 F.Supp.2d 936, 964 (D. Nev. 2010)
6  (court discussed the content on the parked bme.com website, which had "links to
7  topics relating to body piercing, tattooing, and body modification" in determining
8  bad faith intent to profit off of "BME," a distinctive mark in the body modification
9  community); *Webadviso v. Bank of America Corp.*, 448 Fed.Appx. 95, 98 (2nd Cir.
10  2011) (page parking defendant had "intention to profit" when he diverted internet
11  users to "his own website . . . which contained content that could tarnish the
12  infringed marks").

13        Outside of the "parked page" context, other ACPA cases also look at the
14  content hosted on the accused domain name(s) in order to determine "bad faith
15  intent to profit." *See, e.g., American University of Antigua College of Medicine v.*
16  *Woodward*, 837 F.Supp.2d 686 (E.D. Mich. 2011) (plaintiff owned auamed.org;
17  defendant registered and used aua-med.com; in finding no "bad faith intent to
18  profit," the court reviewed defendant's website noting that defendant did not
19  "advertise[] or provide links to any goods or services," but instead used the
20  accused website to express his anger with AUA and its medical program);
21  *Montblanc-Simplo v. cheapmontblancpens.com*, 2012 Wl 2681463, Case No.
22  1:12cv248, at *4 (E.D. Va. June 6, 2012) (in evaluating "bad faith intent to profit,"
23  court noted that defendant's "websites at those domain names generally offer and
24  sell counterfeit products . . . under the MONTBLANC marks").

25        In light of the foregoing cases, it is unsurprising that Google is unable to cite
26  any caselaw for its bald statement that "a domain name violates or does not violate
27  the ACPA regardless of the contents of its associated webpages."  *See* Google's
28

-6-

1  Opp., at 6. That is simply a misstatement of the law.

2  **B. With the Correct Legal Standards in Mind, AMPAS's 30(b)(6) Topics**

3      **are Relevant to AMPAS's ACPA Claims and/or GoDaddy's Defenses**

4         Other than asking some rhetorical questions, Google does not dispute that

5  the following categories of information are all undeniably relevant to Plaintiff's

6  cybersquatting claims against GoDaddy (or GoDaddy's "blame Google" defense):

7  • How, when, and who came up with the idea and decided to implement

8      Google's AdSense for Domains in GoDaddy's Parked Page Programs;

9  • Google's knowledge of methods or processes to prevent trademark

10      infringement in GoDaddy's Parked Page Programs, including Google's

11      knowledge of GoDaddy's patent application entitled "Systems and Methods

12      for Filtering Online Advertisements Containing Third Party Trademarks."

13  • Google's policies, procedures, and expectations relating to domain names

14      incorporating third party trademarks in GoDaddy's Parked Page Programs,

15      including manual screening of domain names that are akin to weekly or bi-

16      weekly screenings for domain names that are considered "adult"; and

17  • Revenue sharing between Google and GoDaddy, for both third-party

18      advertisements and GoDaddy specific advertisements.

19  As set forth in AMPAS's April 3, 2012 meet and confer email to Google, the

20  information sought by AMPAS is geared towards testimony from Google that it

21  makes GoDaddy "aware of its trademark policies, that Google expects its partners

22  to police for trademark infringement before sending domains over for inclusion in

23  AFD, that Google has repeatedly informed GoDaddy of its policies and in fact

24  "docks" GoDaddy's quality scores for including third party trademarks in domains

25  it sends to Google, and that GoDaddy continues to request sponsored links for

26  domain names containing third party trademarks from Google for AFD." *See*

27  8/27/2012 Liang Decl., Exh. E, at pg. 52, ¶9.

28

1    Google then asserts that AMPAS already obtained the "document discovery

2    from both Google and GoDaddy".  *See* Google's Opp., at 7.  Certainly, Google

3    knows that document discovery is different than a 30(b)(6) deposition, and

4    producing documents does not satisfy a non-party's obligation to also produce a

5    witness for deposition.  *See, e.g.*, *Kelly v. Provident Life & Acc. Ins. Co.*,

6    04CV807-AJB BGS, 2011 WL 2448276 (S.D. Cal. June 20, 2011), at *3 ("in

7    responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the

8    position that its documents state the company's position").  In any event, Google's

9    document production has been far from complete.  As just one example, Google

10   only produced post-2008 documents, even though GoDaddy has been using

11   Google's AdSense program to monetize GoDaddy's parked pages since at least

12   2005.  *See* 8/27/2012 Liang Decl., Exh. E, at pg. 51, ¶3.

13   **IV.    AMPAS's Deposition Topics are Not Unduly Burdensome on Google**

14         In a last-ditch effort to avoid producing a witness, Google argues that it

15   would be unduly burdensome to educate and produce 30(b)(6) witnesses, even

16   though it admits that are only 4 possible Google employees that handled the Parked

17   Page relationship with GoDaddy.  *See* 8/27/2012 Liang Decl., Exh. D, at pg. 48

18   (Google agreed to identify "the approximately 4 Google employees who handle the

19   GoDaddy Parked Page relationship").

20         As to Topic No. 1:  Google disingenuously broadens its scope and ignores

21   subsequent efforts to narrow this Topic so that Google can cry foul.  Even though

22   Topic No. 1 is worded broadly, AMPAS made clear that it is only looking for

23   30(b)(6) testimony in specific areas.  *See generally*, 8/27/2012 Liang Decl., Exh. E.

24   Regardless, AMPAS will not seek to ask Google to testify about every single

25   conceivable topic over the last 7 years between GoDaddy and Google.

26         As made clear in Topics 2-4, AMPAS is seeking testimony from Google

27   regarding the narrow topics set forth, such as (1) Google's communications with

28

-8-

1  GoDaddy about GoDaddy's patent application (Topic No. 2); (2) Google's
2  communications with GoDaddy about the agreements between GoDaddy and
3  Google; and (3) Google's communications with GoDaddy about third party
4  trademarks that appear in GoDaddy's Parked Page programs.

5      As to Topic No. 5:  As much as Google may protest on this issue, the bottom
6  line is that communications *from Google to GoDaddy* about trademark
7  infringement in GoDaddy's Parked Page Programs are <u>not</u> attorney-client
8  privileged or attorney work product (*see* AMPAS's Topics 4/5).  And, there is no
9  dispute that the number of times Google has informed GoDaddy about potential
10  trademark infringement in GoDaddy's Parked Page Programs is relevant to the
11  "bad faith intent to profit" element of the ACPA.  *See, e.g.*, *See, e.g., Ricks*, 727
12  F.Supp.2d at 965 (accused cybersquatter's "bad faith is evident when considered in
13  the context of [his] history and knowledge" of cybersquatting).

14      As to Topic No. 7: Not only is there a comprehensive two-tiered protective
15  order in place in the underlying action protecting Google's trade secrets, but
16  AMPAS is only looking for the broad strokes of how the AFD Program selects
17  advertisements.  AMPAS certainly has no desire to gain visibility into Google's
18  "search and advertising algorithms;" instead, AMPAS is looking for a general
19  understanding of how Google parses a domain name into separate terms, and then
20  uses those separate terms to populate a parked website with relevant advertising.

21      AMPAS informed Google exactly what it was looking for here (*see*
22  8/27/2012 Liang Decl., Exh. E, at pg. 52, ¶3).  Google's feigned ignorance is just
23  Google trying to broaden the scope of AMPAS's Topic No. 7 in an attempt to
24  manufacture a reason to avoid a deposition.

25  **V.    Conclusion**

26      For the reasons discussed in AMPAS's Motion and in this Reply, this Court

27

28

1   should compel non-party Google's 30(b)(6) deposition.

2

3   DATED:  September 17, 2012          By: /s/ Enoch Liang _____

4
                                        BOIES, SCHILLER & FLEXNER LLP
5                                       Stuart Singer (*pro hac vice*)
                                        ssinger@bsfllp.com
6                                       David Nelson (*pro hac vice*)
                                        dnelson@bsfllp.com
7
                                        401 East Las Olas Blvd, Suite 1200
8                                       Fort Lauderdale, FL 33301
9                                       Tel: 954-356-0011
                                        Fax: 954-356-0022
10

11                                      David L. Zifkin (SBN 232845)
                                        dzifkin@bsfllp.com
12
                                        David I. Michaels (SBN 276100)
13                                      dmichaels@bsfllp.com
                                        225 Santa Monica Blvd., 11th Fl.
14                                      Santa Monica, CA 90401
15                                      Tel:  310-395-5800
                                        Fax:  310-578-7898
16

17                                      LEE, TRAN & LIANG APLC
                                        James M. Lee (SBN 192301)
18                                      James.lee@ltlattorneys.com
19                                      Enoch H. Liang (SBN 212324)
                                        Enoch.liang@ltlattorneys.com
20
                                        601 South Figueroa Street, Suite 4025
21                                      Los Angeles, CA 90017
                                        Tel: 213-612-3737
22                                      Fax: 213-612-3773
23

24                                      FOOTE, MEYERS, MIELKE
                                        & FLOWERS LLC
25                                      Robert M. Foote (*pro hac vice*)
                                        rmf@foote-meyers.com
26                                      Kathleen Chavez (*pro hac vice*)
                                        kchavez@foote-meyers.com
27
                                        Matthew Herman (*pro hac vice*)
28

-10-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

mherman@foote-meyers.com
30 North LaSalle Street, Suite 2340
Chicago, IL 60602
Tel: 630-232-6333
Fax: 630-845-8982

*Attorneys for Plaintiff*

PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF
NON-PARTY GOOGLE INC. / CASE NO. 5:12-MC-80192-EJD-PSG