1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ACADEMY OF MOTION PICTURE ARTS
AND SCIENCES,

Plaintiff,

v.

GODADDY.COM, INC., ET AL.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C 12-80192 EJD (PSG)

**ORDER DENYING PARTIES'
MOTION TO COMPEL**

**(Re: Docket Nos. 1, 5)**

In this anti-cybersquatting consumer protection act case, both Plaintiff Academy of Motion

Picture Arts and Science ("AMPAS") and Defendants GoDaddy.com, the GoDaddy Group, Inc.,

Domains by Proxy, Inc., GreenDomainMarket.com, BDS, and XPDreamTeam LLC (collectively,

"GoDaddy"), move to compel non-party Google, Inc. ("Google") to appear for a Rule 30(b)(6)

deposition. GoDaddy also moves to compel Google to produce documents. On October 2, 2012,

the parties appeared for hearing. Having reviewed the papers and considered the arguments of

counsel,

IT IS HEREBY ORDERED that the parties' motion to compel Google to appear for a Rule

30(b)(6) deposition and GoDaddy's motion to compel Google to produce documents is DENIED.

GoDaddy proclaims itself the world's leading ICANN-accredited domain name registrar

for common domain extensions. A parked domain name is one that is owned but lacks content. In

1

Case No.: C 12-080192 EJD (PSG)
ORDER

the underlying case pending in the Central District of California,[1] AMPAS alleges that GoDaddy

engaged in cybersquatting by using AMPAS trademarks , including "2011oscars.com,"

"oscarlist.com," and "academyawardzoffering," on parked pages through its "Parked Pages"

program. GoDaddy offers two similar but distinct programs to provide pay-per-click

advertisements on parked pages: (1) sponsored pay-per-click ads supplied by Google's Adsense for

Domain Partners ("Adsense") program; and (2) GoDaddy-specific banner advertisements. The

complaint alleges that GoDaddy's parked pages contain advertisements and sponsored links that

refer to the same general subject matter as AMPAS's activities, including the Academy Awards,

the Oscars, Hollywood cinema, movies, awards and award shows, and red carpet fashion.

AMPAS claims that in order to prove that GoDaddy engaged in cybersquatting, AMPAS

must show GoDaddy's "bad faith intent to profit." Because GoDaddy points to Google's Adsense

program as the source of the sponsored links and advertisements on its parked pages, AMPAS says

that Google's testimony is crucial to explain the following:

- how, when, and who came up with the idea and decided to implement Adsense in GoDaddy's Parked Pages Program;

- Google's knowledge of methods or processes to prevent trademark infringement in GoDaddy's Parked Pages Program, including Google's knowledge of GoDaddy's patent application entitled "Systems and Methods for Filtering Online Advertisements Containing Third Party Trademarks";

- Google's policies, procedures, and expectations relating to domain names, incorporating third party trademarks in GoDaddy's Parked Pages Programs, including manual screening of domain names that are akin to weekly or bi-weekly screening of domain names that are considered "adult"; and

- Revenue sharing between Google and GoDaddy, for both third-party advertisements and GoDaddy specific advertisements.

Google produced approximately 4,600 pages of responsive documents but AMPAS believes that

Google's testimony is nevertheless necessary to discredit GoDaddy's claims that GoDaddy was

only passively involved in monetizing its parked pages.

---

[1] *Academy of Motion Picture Arts and Sciences vs. GoDaddy.com, Inc., et al.,* Case No. 2:10-cv-03738-ABC-CW.

2

Case No.: C 12-080192 EJD (PSG)
ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GoDaddy actually agrees with AMPAS that Google should appear for a Rule 30(b)(6) deposition and further claims that Google should produce additional documents. GoDaddy steadfastly denies that it is responsible for the selection or placement of advertisements on its parked pages and insists that it is Google's Adsense program that controls the placement, content, and revenues related to them. GoDaddy seeks to depose Google on the following topics:

- Google's Adsense program from 2005 to the present;

- Google's monetization of domain names through its Adsense program;

- Google's annual revenues from GoDaddy's parked pages program from 2005 to the present;

- Google's policies and procedures relating to trademarks and/or cybersquatting complaints associated with its Adsense program;

- Google's methodologies to filer, fail-list or otherwise prevent domain names that potentially infringe another's trademark from participating in the Adsense program from 2005 to the present;

- Google's methods, processes, and procedures for determining which pay-per-click ads appear on GoDaddy's parked pages;

- Google's relationship with AMPAS;

- Any agreements between Google and GoDaddy regarding Adsense; and

- The search, collection and production of documents responsive to the subpoena in this case.

GoDaddy also seeks additional documents related to the following general categories of information:

- Google's decisions to fail list websites or parked pages for the domains at issue in the case;

- The revenue Google has earned from GoDaddy's Parked Pages program, including revenues earned from the specific domain names at issue;

- Google's policies, procedures, rules, and regulations for its Adsense program;

- Google's policies and filtration policies and filtration processes to filter domain names that potentially infringe another's trademarks before selecting and placing ads on GoDaddy's parked pages; and

- Google's relationship with AMPAS.

3

Case No.: C 12-080192 EJD (PSG)
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

Confronted with this unified front, Google first responds that AMPAS's motion is brought too late because it was noticed after the fact discovery cut-off[2] and the discovery sought is not relevant to any of the alleged claims. Google argues that much of the discovery AMPAS seeks should be obtained from GoDaddy and that for Google to respond to otherwise overly broad categories of discovery would be unduly burdensome. Rather than doing the hard work themselves, says Google, both parties have colluded to draw Google into their dispute, unfairly causing undue burden on a third party. Google also disputes the relevance of the discovery sought because the question in assessing a cybersquatting claim is not what is contained on a website but whether the domain name itself is identical and confusingly similar to that mark. In addition, the statute provides nine separate examples of factors to be considered in assessing the "bad faith intent to profit" element, none of which implicates Google.

Google further responds that GoDaddy is contractually barred from pursuing the discovery. At one time, the Bryan Cave law firm represented both GoDaddy and Google. A member of that firm negotiated an agreement whereby Google declined to waive formally any conflict but agreed to allow Bryan Cave to continue to represent Google as long as GoDaddy did not seek discovery from Google. This agreement was memorialized in an email on April 27, 2011 as follows:

> Thanks for the quick response and understood. I spoke with the Bryan Cave partner handling the GoDaddy.com defense regarding the conflict, and I've confirmed that they will not seek to subpoena Google.

At bottom, Google argues that GoDaddy made a deal that it should not be able to renege on now. Notwithstanding GoDaddy's contractual obligations, Google argues that the discovery GoDaddy seeks should not be allowed for many of the same reasons that it opposed AMPAS's motion: GoDaddy has sought discovery too late in the proceedings, the discovery sought is not relevant and is redundant, the discovery is available from the parties themselves and public sources, and the discovery sought would be unduly burdensome.

---

[2] The court understands that this cut-off was recently extended by the presiding judge. *See* Docket No. 17.

4

Case No.: C 12-080192 EJD (PSG)
ORDER

**United States District Court**
For the Northern District of California

1    The court agrees with Google. Fed. R. Civ. P. 45(c)(1) provides that "[a] party or attorney

2    responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue

3    burden or expense on a [nonparty] subject to a subpoena. Fed. R. Civ. P. 45(c)(1)." While the

4    discovery sought may relate at some level to the claims at issue, AMPAS has not shown that the

5    4,000 pages of documents Google already produced does not provide the information it needs or

6    why at least some of the additional discovery it wants was not obtained from GoDaddy or public

7    sources. With the discovery cut-off now extended by the Central District, AMPAS also may pursue

8    much of what it needs from GoDaddy directly. While the court is not persuaded by Google's

9    general tale of woe based on the more than 10,000 third-party discovery requests that it receives

10   each year,[3] AMPAS has not shown sufficient grounds here to justify subjecting Google to the

11   additional burden of not only the Rule 30(b)(6) deposition itself but, perhaps more importantly, all

12   the necessary preparation to meet the Rule 30(b)(6)'s significant demands.[4] As for the GoDaddy

13   motion, the court agrees with Google that based on the evidence presented, GoDaddy through its

14   counsel bargained away any future opportunity to subpoena discovery from Google. It cannot now

15

16   [3] In support of the burden argument with respect to the documents that GoDaddy seeks, Google submitted the declaration of Kristin Zmrhal, a Project Manager in Discovery Support at Google.
17   She states that "[u]nfortunately, Google cannot query all of its data repositories for "AMPAS" terms. Instead, our attorneys and paralegals would have to launch an investigation to identify AMAPS's contact points with Google. In order to determine which of Google's scores of product
18   groups might possess responsive documents, our attorneys would have to interview each group, determine if that group has had any interaction with AMPAS, find the primary point of contact, and
19   then determine who in that group would be likely custodians of relevant documents. That process is further complicated by the likelihood that contracting and communications between corporate
20   advertisers and Google is often conducted through agencies. Once the various custodians have been identified, their documents (primarily email inboxes) each have to be collected, processed and
21   searched for relevant keywords, and the resulting documents must then be reviewed for responsiveness and privilege. Typically each custodian has approximately 30 gigabytes of email
22   and user files. The cost to process, review, host and produce this volume of data can be between $100,000 and $120,000 per custodian."
23

24   [4] "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.,* 232 F.R.D.
25   633, 637 (C.D. Cal. 2005), quoting *Travelers Indem. Co. v. Metropolitan Life Ins. Co.,* 228 F.R.D. 11, 113 (D. Conn. 2005); *see also U.S. v. International Business Machines Corp.,* 83 F.R.D. 97,
26   104 (S.D.N.Y. 1979) (Rule 45(c)(3)(A) requires court to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered
27   by it, the particularity with which the documents are described and the burden imposed."); *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.,* 61 F.3d 1250, 1254 (7th Cir. 1995)
28   (motion to compel deposition may be denied on ground that it would not aid in "the exploration of a material issue.").

Case No.: C 12-080192 EJD (PSG)
ORDER

1  renege on the deal because GoDaddy now realizes that the discovery might help its defense in the

2  pending case.

3  **IT IS SO ORDERED.**

4  Dated:    10/19/2012

   PAUL S. GREWAL
5  United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: C 12-080192 EJD (PSG)
ORDER

**United States District Court**
For the Northern District of California